All right, thank you, Council, for your patience. We will all make an effort to try to talk louder. I think you're fine. Okay. So whenever you're ready, Council. Thank you. Adam Flake for the United States, and I would like to reserve five minutes for rebuttal, and I will keep an eye on my time. A delegation of authority from Congress to the Executive is permissible if it lays down by legislative act an intelligible principle to which the person or body authorized to exercise that authority is directed to conform. Here, Congress gave the agency the power to issue regulations necessary to implement the provisions of the act, speaking of the FLIPMA, with respect to the management, use, and protection of public lands, and ordered the agency to manage the public lands under principles of multiple use and sustained yield. And that is sufficient under Ministrata, which I just quoted, and a very long line of cases stretching back a century that we discuss extensively in our briefs. The district court here erred in finding that the language of the statute was insufficient to cabin the authority of the Secretary of the Interior and her delegee, the Bureau of Land Management. So one of the arguments on the other side is that something more than the ordinary intelligible principle test applies, because this is a criminal case. One of the arguments on the other side is that something more than the ordinary intelligible principle test applies, because of the criminal context of this. And in Tooby, the Supreme Court said they hadn't really resolved that question, so maybe that's an open question. Can you address that? Certainly, Your Honor. First of all, it is an open question, but I don't think that this case is an appropriate vehicle to address that, for the simple fact that the Supreme Court has stated that it is open, and it gave some language about meaningfully constrained, but the Supreme Court hasn't really ruled on that issue, and it certainly hasn't actually said what extra the statute needs to show in the criminal context. And many, many cases have said that, hypothetically speaking, if there were such an additional requirement, whatever statute they're construing would meet that requirement. But no case ever has held that that extra is required. And do you think it's an open question in this circuit, in light of Melgar-Diaz? There is an unpublished case from 2022 called United States v. Motamedi, and it says that it was an open question. I think that Melgar-Diaz predates. If I'm incorrect, please correct me. I think Melgar-Diaz predates this case. I think it was a 2001 case. No, Melgar-Diaz was just 2021. Right, and this case came, this unpublished case came afterwards, and it says that it's an open question. So it's unpublished. It certainly doesn't bind the court, and if the court chooses to interpret Melgar-Diaz as meaning that nothing more is required, certainly the government wouldn't object to that. But as I understand it, your view is also that if there were a need to have a case in which you drew a line, this isn't it. That's correct, Your Honor. We laid it out in great detail in a brief, but the instructions for how the BLM is to proceed, what they have authority over, and how they are to regulate the land, it's laid out in great detail in the FLPMA, and so whatever additional the court would find is required, we believe that the statute here meets those requirements. And is that what you're asking us to say, or do you want us to just say it's just the intelligible principle test and it doesn't matter whether it's a criminal statute or not? I mean, if the court wants to say that it's still an open question and not reach it in that case, that would be fine. If the court wants to say that until the Supreme Court rules on this, intelligible principle is all that is required, that's how I read this court's case law to this point. I was thinking about this case. In California, the obligation to have a tail light is set forth by statute. It's set forth by the legislature, right? It's not set forth by the police or the Department of Motor Vehicles. Why isn't that what should happen here? Why are we allowing the agency to make up legislative pronouncements? Well, Your Honor, I think there's a long line of cases that say, you know, Congress simply cannot do its job if it is not able to delegate the authority. The California legislature can do its job by saying you have to have an operating red tail light at the back of your vehicle. They can do that. Why can't Congress do that? Why does it have to delegate it to an agency? Well, Your Honor, I mean, if we want to pick any particular statute, like any particular of the regs, Congress could do it. But I think the judgment of Congress over the past hundred years has been, we are going to give discretion to executive agencies to make these determinations. And of course, if we isolate each individual one, then the legislature could have done it. But but many cases, many cases recognize that Congress simply cannot do its job if it's not able to call upon. And we've been cutting back recently in some cases on the ability of the agency to regulate without further congressional authority. For instance, Loeb or Bright was one issue. Did Jarchese versus SEC, does that have any effect on this case? It does not. We did talk about it. And I think it's readily distinguishable because the problem in Jarchese was the SEC without any standards was deciding who got what legal process. They were they were they were pulling people out of the court system and putting them into there and denying people the right to process. And there's there's just no issue like that in this case. There's no doubt that that Mr. Pheasant had the right to. We had to charge it and he appeared before a magistrate judge or be tried before a magistrate judge if it had proceeded to that point. Counsel going to Judge Bay's first question, and I apologize for not knowing this. If it's in the record, is the land where the alleged offense took place within the special maritime and territorial jurisdiction of the United States such that California law would be assimilated or such that whatever relevant state law there was would be assimilated under the Assimilated Crimes Act? I actually I know where the land is. It's in Reno, Nevada. I'm sorry, Nevada, but I I honestly do not know the answer to your question on that, that that I had not thought about that particular thing. And I don't know the answer to your question. I apologize. Is it significant to the delegation analysis that this is that what we're dealing with here is a regulation of public land? Yes, Your Honor, I think that every as as the court as the courts address non delegation issues as they arise, it looks at the context of the statute. So when it addresses a case about air pollution in the EPA, the the fact that they're addressing air pollution sort of gives rise to like it sort of animates the decision about the the scope of the delegation. And the same with public lands. When the if you consider the fact that the government is a proprietor of the lands that it owns, it gives the BLM the ability to make regulations necessary for the use of the land. And Congress has laid out the goals that it has multiple use, sustained yield. The statute lays out in detail how the land, how its policies for how the land is used. And then the agency figures out how to best accomplish the the goals that that Congress has laid out for it. Simply being a proprietor of land doesn't allow me to make something criminal on my land, does it? No, certainly not, Your Honor. And the government acts as both a legislature and a proprietor on federal land. And so when Congress can can make make laws that govern the land. But my point was the point of being a proprietor is is the laws on public land are going to look different than the the or the regulations on public land are going to look different than on private property. You know, we can one of the funny examples they cited was regulating wild burrows. We don't the government doesn't need to regulate wild burrows on people's own property the way that it needs to on on public land. And so that's one of the that's that's one of the regulations that the BLM has has put in place. And I'll save the rest of my time for rebuttal if the panel doesn't have any other questions. All right. Thank you. Good morning. May it please the court. My name is Elise Henderson, and I'm here on behalf of Gregory Pheasant. The district court correctly dismissed this prosecution under the non delegation doctrine, and we're asking this court to affirm. I'd like to start by answering some of your honor's questions to government counsel before turning to the delegation language and some other aspects of the delegation that are problematic here. But counsel, I have a problem with the decision below the decision in the first line of the R.O. three. It says that the attorney, district attorney of Nevada, a charge, Gregory Pheasant with three felonies stemming from the alleged failure. That's a there was no three felonies or one felony and two and two violations. Right. That's correct, your honor. And that's wrong. Correct. And we're not we're not challenging the felony under non delegation grounds. Congress passed up. I was if there had been felonies, I was wondering, does non delegation doctrine also allow turning congressional statutes, which limit the violations to misdemeanors in the felonies? And I'm glad you cleared that up. Yes, the assault charge was passed by Congress, so that's not at issue here. OK. Your honor's asked about the assimilative crimes act. If this court was to agree that the delegation here was unconstitutional, 18 U.S.C. 13 would come into effect because there would not be other controlling federal. So the dirt where this occurred is within the special maritime and territorial jurisdiction of the United States. Yes. So my understanding is it would apply. Nevada law would be incorporated into any federal prosecution. And that's important here because invalidating the statute would not result in lawlessness on BLM land. But of course, if but of course, if the government is right, then the assimilative crimes act wouldn't apply because theoretically, Congress through the secretary has spoken. If they're right. If they're right about the delegation, your honor. OK, it applies by default if there's no other controlling law. Right. And then there was a question about criminal law, criminal delegations in the Ninth Circuit. And Melgar Diaz did not address this issue. So the unpublished decision was correct that it is still an open issue in Nevada. Why didn't Melgar Diaz implicitly reject the argument that you're making? I mean, that's there. There the delegation was or the statute says you can't cross the border except at the designated places. And so it's a delegation to say effectively where you can cross the border. And we said that was fine. We didn't apply a heightened standard beyond the normal intelligible principle test. Why doesn't that strongly, at least strongly suggest the right analysis here? Because this court didn't say that it was rejecting a higher standard. It doesn't appear that it was in front of this court because it doesn't it's not in the opinion itself whether a higher standard applies, like in some cases that the government cites. But our argument is also we make the argument that criminal delegations are different. They should be looked at more closely. But our argument is that this delegation is unconstitutional under the current test, under the current precedent. It's unconstitutional because it does not provide an intelligible. Before you get to that, just a couple more questions. Why should it be different for a criminal case? I mean, my I thought the theory of the non-delegation doctrine is that the vesting clause of Article One gives Congress legislative power. And that means they can't give legislative power to somebody else. And when we have a delegation, they either have or have not violated that vesting. But I don't see why it would matter what kind of regulation it was or whether it was whether it was a criminal law or some other kind of law. The concerns with criminal laws seem sort of independent of the concerns with the vesting clause. So why is it relevant? It's relevant for a few reasons, Your Honor. And some commentators have talked about this recently. Justice Gorsuch, when he was a judge on the Tenth Circuit, talked about it. The idea that a resident of the United States can be prosecuted and put in jail is the highest implication of liberty interests. And the point of separation of powers is to protect liberty. And when you have delegation to the executive branch of criminal lawmaking power, that's the same branch that's interpreting and applying the law. So you're delegating to the executive branch the ability to create criminal law on BLM land and then also arrest people for that law that it created. And it's condensing too much power in one branch of the government. And that's what the framers were most worried about when they created the three branch system that we have. But what do you, I mean, so I had always thought of the intelligible principle test as a way of getting at the question, you know, has Congress actually made the judgment here and what the executive branch is doing is just sort of interstitial policymaking that's ancillary to execution of the laws and not legislation? Or has Congress delegated legislative authority? And so if you're saying that that test is not adequate in the criminal context, what would we look for in a statute if it's not an intelligible principle? What would be the heightened standard that you would have us apply? We're not asking for a different test than intelligible principle test. What we're asking for is that in criminal delegations, the courts take a closer look. And that's, it's hard to say where the line is between a permissible delegation and an impermissible one in the criminal or the civil context. But what it would look like for delegations to interior agencies, I think the delegation here provides much less guidance to the agency than delegations to, for example, the National Forest Service, where the delegation says create criminal law to protect against destruction. So taking that one that's closer to Congress setting the policy, if there was a higher standard for the intelligible principle test in the criminal context, that might get a closer look than when a different circuit was looking at that same delegation some time ago. Counsel, if you were right in terms of the delegation here being, excuse me, being unconstitutional for the reasons you've stated, why wouldn't the Assimilative Crimes Act itself be unconstitutional? Because Congress passed that act, Your Honor. But isn't in the act, Congress essentially delegating to state and municipal authorities the ability to define what is and what isn't a crime on huge swaths of federal land without not only no guidance, but with the inability to provide guidance. It's still Congress making the policy choice that we think state law should apply for federal land in the different states. It's still Congress making that initial policy decision that it's not making with the statute here. It's still Congress making the policy decision that 50 different murder statutes, well not murder, that's the wrong one, but 50 different traffic offenses, 50 different other kinds of felonies are going to apply or 54. But here with what they've said to the Bureau and the Secretary that that isn't okay, but delegating to state authorities essentially the ability to determine crime and punishment throughout the United States on federal land is okay? The people prosecuted under Section 13 are still being prosecuted under federal law. And if voters had a problem with Section 13, their problem is with the legislature who passed it. Because the federal courts aren't applying state law, they're incorporating state law. So they're looking to state law for guidance, but they're still applying federal law in federal court. And Congress is responsible and accountable for passing that law. Here, Congress delegated the power to pass laws to unelected agency officials, and they're prohibiting with criminal rules and regulations a wide variety of actions on public land. And if people have problems with those regulations, Congress isn't responsible for passing them. It's unelected agency officials. And government counsel gave the example of wild boars. But there are other examples. There are some political sensitivities with that. But there are other examples, too, where Congress should be creating the law because it's politically sensitive. They should be making the policy choice, for example, between promoting natural resources and private contracts to develop natural resources. In that regard, if I'm looking, for example, at 1733A, regulations necessary to implement the provisions of this Act with respect to the management use and protection of public lands, including the property located thereon, that's an unintelligible principle vis-à-vis the standards you just discussed. Correct. It's hard to think of something that would not relate to the management use and protection of the public lands. And I think the GSA delegation… I mean, so the Communications Act refers to public interest, convenience, and necessity. And a lot of sort of contemporary statutes have similar regulatory language. And that's been upheld for a long time. You think this is less of an intelligible principle than public interest, convenience, and necessity? The language is similar, and the language is similar to the GSA delegation. What's different here is the agency itself. And this Court looks to not just the statutory language but also the mission of the agency and whether that provides a limiting principle. So when you have a statute that delegates the protection of GSA buildings, that's a limited universe of regulations that GSA can enact. Protecting a federal courthouse, Congress sets the policy for that building, and GSA does some pretty predictable things to protect a federal courthouse. With BLM land in particular, there are a lot of different policy interests for BLM land. It is a lot of land in the United States and two-thirds of Nevada. So policy for some land is going to look different than policy for other land, and there's going to be competing interests like promoting recreation, preserving historical sites, and developing natural resources like timber, oil, and natural gas. And it should be Congress who is specifying what the policy is, not the agency. I wonder if the ‑‑ this is the same question I asked your friend. Does the fact that it's public land, though, cut against you in the sense that the Supreme Court has said that Congress has complete power over federal lands that's analogous to the police power of the states, all of which suggests that maybe Congress should get more leeway when it comes to regulating federal property than when it's sort of reaching out and regulating the activities of individuals on their own property rather than less. So what's your answer to that? A few responses, Your Honor. First, that clause of the Constitution, like the taxing power, is vested in Congress. So Congress is still limited by the nondelegation principle from delegating legislative power. Now, if we were challenging the agency's civil regulations, it would be a harder question because the executive branch does retain some inherent authority to manage the public lands. Like this court said in Melgur Diaz, the executive branch has some inherent authority to regulate immigration and the placement of border crossings. But the executive branch does not have inherent authority to create criminal law. That is a core legislative task that is vested in Congress. And Congress can delegate fact-finding to support that criminal lawmaking. It can delegate to the agency to fill up the details. But it can't delegate to the agency the creation of criminal law. That has to stay with Congress. So it doesn't make any difference what the criminal law is? Under this delegation, no, Your Honor. Under your theory, it doesn't make any difference whether the delegation is vis-a-vis a violation for littering or like a 25-year felony. It's all out no matter what the actual criminal regulation, no matter the conduct that's prohibited. Correct. This court would look only to the delegation itself, not the regulations that are enacted under that delegation. So we're not saying it's unreasonable for BLM to create these regulations, but that's not the test. The test looks at the delegation itself. If the statute had said we specifically delegate to the Secretary the ability to criminally punish taillight violations, that would be out. That would be fine because Congress is setting the law. So Congress, it would be okay if Congress mentioned taillights, but it wouldn't be okay with the language here, management use and protection of public lands. Correct, because Congress needs to choose the policy. So if Congress's policy choice is we want to enforce regular traffic code violations on BLM land, it could absolutely do that. So they could say that, and then in your view, the Secretary could have regulations which would set the criminal penalties? The penalties are in the statute itself. Right, but the Secretary could adopt those criminal, could pass the same regulation that's at issue here if Congress had said taillights or traffic offenses. Correct. And I think Melgar-Diaz provides a good example of this. In Melgar-Diaz, this court said that it's okay for Congress to pass a criminal law about crossing a street outside a crosswalk, and then the agency can choose where the crosswalk is. Speeding is another example. Congress can make it criminal to speed on federal land. The agency can determine what the speed limit is based on fact-finding. Would traffic offenses be good enough? It's a closer question, Your Honor, because that does still involve a lot of discretion to the agency to choose those traffic violations, but at least it's limited in some way. Unlike here, where it could be traffic violations, it could be restrictions on speech outside designated areas. It could be restrictions on hunting. There's a lot of different choices BLM is allowed to make and is making under this delegation that involves sensitive political decisions that elected representatives in Congress should be making. And when I asked you about, you know, why this is worse than public interest convenience and necessity, that was your answer, that there are sensitive political considerations here and competing policy concerns. But isn't that equally true of what the FCC does, what FERC does, what all of the many other agencies under public interest convenience and necessity or just and reasonable or some similar statutory language? I mean, they're balancing policies and adopting regulations that are incredibly important economically. So do you have a distinction other than sort of how consequential these policies are? Yes, Your Honor. It's not that the agency is doing important politically sensitive tasks. It's that the agency in these other cases is given guidance from Congress about what the boundaries of their discretion is. So the agency is limited by the mission of the FCC and by the delegation itself in ways that BLM is not limited here. So the FCC couldn't make whatever regulations it wanted to as long as it relates in some way to communication systems. But here, BLM can make any regulations it wants to as long as it relates to the land. And anything BLM does that controls on the land is going to relate to the use of that land. If BLM is restricting private conduct on that land. It does have to be implementing the Act, right? And the Act says that the land is supposed to be managed under principles of multiple use and sustained yield. So that's a principle that's supposed to guide the Secretary, isn't it? The government argues that it does, but it doesn't meaningfully limit the agency. Because multiple use and providing the policy statements in Section 1701, that covers everything that the delegation itself covers. If the agency is making a criminal regulation that relates to the use of the land, they can pick one of the policy statements it also relates to. If the land is open for public recreation, it relates to recreation. If it is related to protecting oil drilling, then it relates to natural resources. There's no limiting principle. And that makes this case like the policy guidance in Panama refining and Schechter poultry. Where, yes, there were some aspirational goals at the beginning of those statutory schemes. But it didn't limit agency discretion. Ms. Henderson, one last question. I know your time is up. I took a note here is that the creation of criminal law is a function that is restricted only to Congress. Do you have a case that says that? Not a case that says that. My answer is that all lawmaking is restricted to Congress. Criminal lawmaking, especially because of... I think you've answered my question, which is do you have a case that holds that? I don't have a case off the top of my head. I'm not sure of some of the commentary and some of Justice Gorsuch's dissent in Gandhi. I'm not sure if it touches on that. But the law is clear that Congress can't delegate legislative power. The question is the line between legislative and not legislative. Counsel, you're over time, but we've asked a lot of questions. Do you have a concluding point you want to make or do you want to rest on your argument? We would just ask that this court affirm because the statute lacks an intelligible principle. Thank you. All right. Thank you. And the government has substantial time for rebuttal. Just briefly, Your Honors, I wanted to point the court's attention to United States v. Grimaud, which we cite in our briefs. It's from 1911, and it says, Congress often authorizes agencies to promulgate regulations, the violation of which Congress has made a crime. And that's what happened here. The Congress said make regulations. The BLM made regulations. The BLM did not make them a crime. Congress made the crime. And that has been the law of this country for 100 and something, 14 years. And listening to my friend on the other side's argument reminded me of Justice Alito's concurrence in Gandhi, where he said if the court was willing to revisit the whole thing, the whole non-delegation doctrine, then he might be willing to do that. But to pick out that one statute in that Gandhi case would have been, I think the word he said was freakish, don't quote me, but it would have been unusual. This statute, this FLPMA statute, fits well within the prior case law on this issue from this court and the Supreme Court. And what the district court did here was a very large departure from precedent. And if the court doesn't have any other questions, I'll conclude. Thank you. All right. Thank you. We thank counsel for their arguments. The case just argued has been submitted. I would also note that this was the panel that was going to hear cases tomorrow. We have submitted all those cases on the briefs as of tomorrow, and I would put on the record that Waypite versus Garland, United States versus Henry, Shields versus Credit One Bank, and Meza-Perez versus Sbarro will be submitted on the briefs as of tomorrow. With that, we are adjourned for the day and the week. Thank you. All right. Thank you.
judges: BEA, BENNETT, MILLER